No. ——
First Circuit

WILLIE LEBRAY v. SAM VICARI

(November 10, 1925, Opinion and Decree)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Appeal—Par. 625.**
The finding of the trial court as to a matter of fact, namely, the question of negligence of the minor son of the defendant, being clearly correct, is affirmed.

Appeal from the Parish of East Baton Rouge. Hon. W. Carruth Jones, Judge.

This is a suit arising out of an automobile accident in which a truck in which the plaintiff was riding overturned.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Leslie A. Fitch, attorney for plaintiff, appellant.

Charles A. Holcombe, of Baton Rouge, attorney for defendant, appellee.

MOUTON, J. Plaintiff was injured in an automobile accident on the Highland road in the Parish of East Baton Rouge on Saturday, December 8, 1923. Plaintiff was riding in a truck which was being driven at the time by Collie Vicari, the minor son of defendant herein, against whom this suit is brought in damages. The claim was rejected and plaintiff appeals.

No question of law is raised in this case, the issue presented being almost entirely one of fact. The sole contest submitted is as to whether Collie Vicari, the minor son of defendant, who was driving the truck, was guilty of negligence at the time of the occurrence.

Sam Vicari, defendant, is a merchant and runs a store on the Highland Roadway some distance from the place where plaintiff was injured. His son, Collie, left the store in a truck to make delivery of merchandise at different points. Upon leaving plaintiff got in the truck with Collie and Spina, a companion of the driver. Much is said as to whether plaintiff was riding in the truck as an invitee. The proof is not clear on this question, but we will consider him as such in passing on the issue presented.

Collie was driving southward and his truck, upon reaching a portion of the Highland road where it is cut in a hill forming banks on each side, was turned over, resulting in the injuries of which plaintiff complains. These banks, as the record shows, rise to a height of some six or eight feet on each side of this roadway. In his petition plaintiff alleges: "That as the truck approached the bottom of the hill (which is the portion of the road above described) that Collie Vicari lost control of said truck in such a manner as to cause it to swerve to the west side of the road, which it did, striking the bank on that side with such force and violence as to completely overturn said truck, and the momentum by its speed just prior thereto propelled your petitioner through the air a distance of approximately twenty feet, in such a manner that he fell upon the ground, severely injuring him". The defendant, on the other hand, alleges as the cause of the accident, that the truck his son was driving on the Highland road was struck by a large automobile which was coming in a northerly direction on said road; that plaintiff, realizing the certainty of a collision, jumped out of respondent's truck and was thereby injured. Defendant, in his answer, ascribes the accident to the fault of the driver of the automobile that ran into his truck, and asks exoneration for the damages claimed.

Willie Crockett, witness for plaintiff,

when asked if he knew anything about the "wreck", answered: "Yes, sir, 'in parts'." Thereafter, he explains that he knew nothing of the accident except the impression he saw on the back of the truck where it struck the ground, but that he did not see when it happened. Jake Keller, another witness for plaintiff, says he was about 55 or 60 yards from the truck when the accident happened. He says he saw when the truck hit the west bank. When asked if he claimed to know how the wreck occurred, he said: "No, sir, no more than hearing him strike the bank. That is all I seen." He testifies that the truck was coming down hill at the speed of about 30 miles an hour; that he did not see any other automobile at the time of the wreck, and from the position he occupied would have seen one if any had been on that roadway. Tobe Richardson, another witness for plaintiff, says Collie Vicari was driving the truck fast, and in a reckless manner. He likewise saw no other automobile at the time. The only thing he could see, he says, "was the hole in the ground where they ran into the ditch bank". This witness seems to have seized on the leading issue of the complaint in saying he had seen a hole in the ground caused by the impact of the truck, a fact not testified to by any other witness, if we have correctly read the note of evidence. This testimony in reference to the "hole" does not harmonize with the theory of the defense where counsel explains that the truck "did not run to the bank head on, but approached it at an angle, etc.", and where, he says further on, in referring to the truck, that it will thus be seen that the right side would never come in contact with anything that could injure it, etc." If the impact of the truck was such as to tear a hole in the ground, as stated by Richardson, the truck unquestionably came in contact with something that could injure it.

Richardson was walking on the Highland road and was going in the same direction that defendant's car was traveling, which passed him, as he testifies, a long while before it got to the place where the wreck occurred. He says he did not see how it happened; that he was around the corner from the car and did not know if he was "three or four or five blocks". He does not seem to have heard the wreck as was the case with Crockett, the other witness. The record shows that Richardson has a police record and had been six or seven times in jail for drunkenness and disorderly conduct. Two officers, well acquainted with him, testified they would not believe him under oath. In all probability, from the character of his evidence, and his record, the court reached the same conclusion as to his veracity.

Lebray, plaintiff, testified that Collie, with whom he was riding, was speeding along the highway, and that he cautioned him against running at such a rate of speed, particularly, as it was Saturday night when many cars were traveling this roadway; that Collie continued in this reckless speed down the hill and that as he got around the curve ran into the bank which skirted the road, throwing him out of the car, thus inflicting the injuries for which he sues in damages. He is certain there was no other auto around at the time which ran or could have run into Collie's car, as asserted by defendant.

Dr. E. O. Trahan, a practicing physician of the city of Baton Rouge, was called upon to attend to the injuries of the plaintiff, and which he says he understood was immediately after the accident. He testified that he asked plaintiff how the accident happened, to which he replied that "he saw they were going to run into some-

body"; that he tried to jump out and in doing so fell down. On cross-examination counsel for plaintiff asked the doctor if he had not asked plaintiff "if this was a wreck between two cars". His answer to this question is: "He told me that he thought another car had run into him." If we understand counsel for plaintiff correctly, he points out that the questions propounded by the doctor were suggestive, and in a way account for the answers of defendant. Not only did the plaintiff answer that another car was about running into Collie's auto, but also said that he had tried to jump out, and, in doing so, fell. There was nothing in the question that could suggest such an answer, which was made immediately after the accident when the facts were still fresh in plaintiff's mind. This answer of plaintiff not only contradicts his testimony when he says the cause of the accident was the running of Collie's auto into the bank, but also that portion of his statement where he says the car ran into the bank with such great speed that it "throwed me out of the car", which is contrary to his statement that he "tried to jump out". These statements of the plaintiff to Dr. Trahan are also in direct conflict with the grounds of complaint of the plaintiff, as appears in his petition above reproduced.

Collie, the driver, and Spina, his companion, both testify they were going at about 15 or 20 miles an hour when a big auto going northward, in the opposite direction to the car of defendant, ran into their car on the left side, causing the damage. This was on a dark night, as testified by all the witnesses. Spina and Collie both say that the auto which ran into them was running fast and had no lights; that their car was being driven on the right side of the road when the collision happened. Their testimony in ref-

erence to their car being run into by the auto is in line with the admission of the plaintiff to Doctor Trahan that he tried to jump out to avoid an impending collision. The first parties to appear on the scene after the wreck were Lungaro, Lassario, Melancon and Percy Ivy.

Lungaro and Lassario were traveling in a car going in a direction opposite to that in which defendant's car was moving. They both say a big car going in the same direction they were traveling passed ahead of them, going fast and without lights. Lungaro did not see when the cars collided, but saw the lights flicker when defendant's car turned over, while Lassario says he saw the collision and heard the noise caused by the wreck. Percy Ivy was in his yard working, heard the noise of the wreck, and came immediately upon the scene. He says he heard the noise of more than one car, although he admits he did not see another automobile. He testifies that the damage to the truck was on the left side, and that it was turned over on the right hand side of the road. Melancon, who was also an occupant of Lungaro's car, says he saw this big auto pass along without lights at a lively speed and going northward. He did not see the collision, but heard the noise and saw the light of the Collie car flicker out. It is well established by the record that the left side of defendant's car, the running board, also the fender, were badly broken or torn up. It is also well shown that defendant's car was found immediately after the wreck, on the right side of the road. These physical facts make it quite clear that the damage was caused by another car running into defendant's car, as the smashing up of the left side of defendant's car could not possibly have been the result of the defendant's car climbing up the bank on the west side of the road, as counsel for

plaintiff attempts to explain. Counsel for plaintiff attempts to throw a doubt on the evidence of Lungaro, Lassario and Spina, because, with defendant, they are of the Italian lineage or race, and even on friendly relations with defendant. The fact that they were friends and of the same nationality is certainly not sufficient to affect their credibility as witnesses, and to discredit them in a Court of Justice. Let us say they are Italians, and that it were permissible to allow a feeling of suspicion to hover over their testimony because of their lineage; there still remains the evidence of Melancon and Percy Ivy, which corroborates the evidence of Collie Vicari in all of its essential particulars. In addition thereto comes the evidence of Dr. Trahan, the physician of defendant, but certainly not of Italian extraction, to whom plaintiff made the damaging admission that he had jumped out of the car to escape the danger of a collision.

In conclusion, we will say, that the noise which Jake Keller, witness for plaintiff, heard, which Percy Ivy also heard from his yard, was, it may reasonably be inferred, the noise that was caused by the impact of these two cars going in opposite directions or the collision testified to by Collie Vicari, Spina and Melancon. We have made a careful, elaborate and possibly a too lengthy analysis of the evidence in the record, but are unable to find support of the claim of the plaintiff that the injury had been caused by defendant's car running in the bank on the side of the Highland Roadway. Evidently the District Judge arrived at the same conclusion, found it was not shown defendant was at fault, rejected the demand, and correctly.
          Affirmed.